RECEIPT # 52094
AMOUNT $ 150.00
SUMMONS ISSUED YES
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. Kim Abcud
DATE 12-1-03

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **FIRST CONGREGATIONAL CHURCH OF HAMILTON,** | CASE NO.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| **TOWN OF HAMILTON, TOWN OF HAMILTON HISTORIC DISTRICT COMMISSION and TOWN OF HAMILTON ZONING BOARD OF APPEALS,** | **JURY TRIAL DEMANDED** **03-12405 JLT** |
| Defendants. | MAGISTRATE JUDGE Collings |

NOW COMES the Plaintiff, FIRST CONGREGATIONAL CHURCH OF HAMILTON, and by and through its undersigned attorneys, alleges the following causes of action:

**JURISDICTION AND VENUE**

1.1   Plaintiff brings this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivations of Plaintiff's rights secured by the First and Fourteenth Amendments to the Constitution of the United States of America and by the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*

1.2   Jurisdiction of the Court is proper under the provisions of 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983.

1.3     Jurisdiction is also conferred on this Court by 28 U.S.C. § 1331, which provides for original jurisdiction in this Court of all suits arising under the Constitution and laws of the United States.

1.4     Venue is proper pursuant to the provisions of 28 U.S.C. § 1391.

### PARTIES

2.1     Plaintiff repeats and re-alleges Paragraphs 1.1-1.4 and incorporate said Paragraphs herein by reference.

2.2     Plaintiff, FIRST CONGREGATIONAL CHURCH OF HAMILTON (hereinafter referred to as "the Church"), is and at all times relevant hereto was an eleemosynary non-profit organization existing under the laws of the Commonwealth of Massachusetts.

2.3     Defendant, TOWN OF HAMILTON (hereinafter referred to as "the Town"), is and at all times relevant herein was a municipal corporation, organized and existing under the laws of the Commonwealth of Massachusetts.

2.4     Defendant TOWN OF HAMILTON HISTORIC DISTRICT COMMISSION (hereinafter referred to as "the Historic District Commission") is and at all times relevant hereto was an agency and/or instrumentality of the Town of Hamilton, duly established pursuant to applicable provisions of the Town of Hamilton Historic District By-Law and the Historic Districts Act, M.G.L. c. 40C, §1, *et seq.*

2.5     Defendant TOWN OF HAMILTON ZONING BOARD OF APPEALS (hereinafter referred to as "the Board of Appeals") is and at all times relevant hereto was an agency and/or instrumentality of the Town of Hamilton, duly established pursuant to applicable provisions of M.G.L. c. 40A, the Zoning Act.

## FACTUAL AND PROCEDURAL HISTORY

3.1   Plaintiff repeats and re-alleges Paragraphs 1.1-2.5 and incorporates said Paragraphs herein by reference.

3.2   The Church owns the real property and all improvements thereto situated at and commonly known as 624 and 630 Bay Road in Hamilton, Essex County, Massachusetts (hereinafter referred to as "the Property").

3.3   The Property is located in a residential zoning district.

3.4   A portion of the Property is located within the Hamilton Historic District, as established under the Hamilton Historic District By-Law.

3.5   The Church traces its origins to 1713, at which time the Hamlet, a part of the Town of Ipswich, was given permission to establish its own church. A separate church was, in fact, established in the Hamlet as the Third Parish of Ipswich in 1714.

3.6   The building, which houses the Church, was constructed at the corner of Bay Road and Cutler Road in 1762 and underwent substantial modification in 1843 (hereinafter "the Sanctuary").

3.7   In 1773, the Town of Hamilton was established out of the Third Parish of Ipswich.

3.8   The Sanctuary served as the seat of Hamilton town government until 1897, when a new Town Hall was built.

3.9   The Church predates the establishment of the Town of Hamilton and the Town of Hamilton traces its origin, at least in part, to the Church.

3.10   By 1989 the regular weekly attendance of the Church grew to include approximately six hundred and fifty to seven hundred persons. While the size of the Church's regular attendance

has remained roughly the same since 1989, the composition has changed with children now representing a greater percentage of the total number of people in attendance. There are approximately 350 children in regular attendance today.

3.11    In 1990, in order to attempt to better accommodate the needs of an increasing number of attendees, and especially the needs of school age children, the Church acquired an abutting parcel of property at 624 Bay Road in Hamilton, known locally as the Wigglesworth/Cutler property, which included both a three story wood frame single family dwelling and a two story wood frame barn. Both existing structures had and continue to have important historic and architectural significance. The total land area of the parcel known as 624 Bay Road is 101,125 square feet, more or less.

3.12    The single family home, which was situated upon the Wigglesworth/Cutler property when the Church acquired the parcel in 1990, was built in 1714 as a parsonage for the first minister of the Church.

3.13    In 1989, prior to the Church's acquisition of the abutting property at 624 Bay Road, the land area of the Church's property at the corner of Cutler Road and Bay Road measured only 22,100 square feet, more or less, and it contained on site parking for only 12 vehicles, including two handicap parking spaces.

3.14    Although not strictly enforced, parking was and is prohibited along Bay Road, Route 1A, a state highway and, also, significantly restricted along Cutler Road, which prohibitions inhibited and continue to inhibit attendees in their efforts to attend Sunday worship services and to attend and participate in other religious activities conducted at the Property.

3.15    Through its acquisition of the abutting Wigglesworth/Cutler property, the Church sought, inter alia, to make provision for adequate on-site parking and to convert the historic house

into a center for religious education classes and administrative offices and to convert the barn into a recreational facility for youth activities and other religious fellowship activities.

3.16    Today the Property includes the Sanctuary, the Wigglesworth/Cutler house, which contains classroom space and administrative offices, the barn which is used largely for church sponsored youth activities, a small parking area along Cutler Road and a 38 space parking lot constructed in or around 1993.

3.17    Out of respect for the historic importance of both the single family home and the barn, both of which were situated upon the Wigglesworth/Cutler property when the Church acquired the parcel in 1990, the Church chose to work within the confines of the existing foundation and framing of the two structures when it began renovations to the two structures.

3.18    The Church's conversion of the Wigglesworth/Cutler house and barn to religious use did not require any exterior alterations and, therefore, there was no need for the Church to obtain municipal approvals or permits from either the Board of Appeals or the Historic District Commission, as preconditions to the conversion of the two structures on the Wigglesworth/Cutler property in order to adopt their use to religious purposes.

3.19    Both the Board of Appeals and the Historic District Commission, however, asserted jurisdiction over the parking facility proposed by the Church, as a result of which the Church was required to submit plans for its proposed parking facility to both the Board of Appeals and the Historic District Commission for discretionary review and approval. The administrative review and approval process applied to the proposed parking facility also opened the permitting process for the parking lot to appeal by certain neighboring property owners who were opposed to the parking facility.

3.20   Initially, the Church proposed a 131 space parking lot for the Property. The parking facility was scaled down to a 77 space parking lot during site plan review proceedings before the Board of Appeals and in response to concerns raised by neighboring property owners. The Board of Appeals issued a decision in or around 1992, granting site plan approval for a 77 space parking lot, which decision was appealed to the Massachusetts Superior Court by certain neighboring property owners. The Board of Appeals' decision was affirmed by the Essex County Superior Court and, ultimately, the Superior Court's decision was affirmed by the Massachusetts Appeals Court.

3.21   In or about 1992, the Church filed an application with the Historic District Commission for, <u>inter alia</u>, a Certificate of Appropriateness allowing the construction of the 77 space parking facility. The Historic District Commission refused to approve the 77 space parking facility and the Church filed an appeal of the Historic District Commission's refusal to the Massachusetts Superior Court. In a decision dated July 31, 1992, the Essex County Superior Court denied the Church's appeal.

3.22   In April of 1993, the Church filed a new application for a Certificate of Appropriateness with the Hamilton Historic District, seeking approval for a smaller 38 space parking lot. In July of 1993, the Commission voted to grant the Church a Certificate of Appropriateness for the 38 space parking lot, subject to certain restrictive conditions, including one condition purporting to prohibit any future increase in the size of the parking lot (hereinafter the 1993 Certificate of Appropriateness). A copy of the 1993 Certificate of Appropriateness is attached hereto and incorporated herein by reference as Plaintiff's Exhibit "A". Certain neighbors of the Church filed an appeal of the 1993 Certificate of Appropriateness to the Massachusetts Superior Court. That appeal was subsequently dismissed.

3.23  In August of 1993, the Church filed an application with the Board of Appeals requesting site plan approval for the 38 space parking lot approved by the Historic District Commission. In or about November of 1993, the Board issued a written decision granting site plan approval to the 38 space parking lot, subject to certain conditions enumerated in that decision (hereinafter "the Amended Site Plan Approval Decision"). A true and accurate copy of the Amended Site Plan Approval Decision is attached hereto and incorporated herein by reference as Plaintiff's Exhibit "B". Certain neighbors of the Church filed an appeal of the Amended Site Plan Approval Decision to the Massachusetts Superior Court. That appeal was subsequently dismissed.

3.24  The 38 space parking lot was eventually constructed upon the property by the Church.

3.25  The Hamilton Zoning By-Law did not, at the time the Board of Appeals issued the Amended Site Plan Approval Decision in 1993, and does not, today, establish any minimum on site parking requirements for religious uses in the Town of Hamilton.

3.26  Because the Church did not change any exterior features of the historic home and barn situated upon the Wigglesworth/Cutler property, when it undertook renovations to convert those two structures to religious uses, the usable space resulting from the renovations and the functionality of that space was limited. Further, the already limited classroom space in the Wigglesworth/Cutler house was further reduced when classroom space was converted to office space to accommodate the administrative needs of a growing church staff.

3.27  The buildings and facilities which are now located on the Property are insufficient to meet the Church's needs and much of the existing space is functionally outdated and does not meet the present day standards established by safety, building and health code regulations. From time to time, certain Sunday school classes have not had classroom space to meet and the Church

lacks an adequate sized room to accommodate its congregation for social fellowship after worship services and for such traditional Congregational activities as church suppers, youth group activities and Congregational meetings.

3.28  Religious education and such Congregational social activities are essential to the tenets of the Congregational faith and the furtherance of the Church's religious mission.

3.29  In or about January of 2002, in response to a growing need for adequate, safe and functional space, the Church finalized plans to improve the Sanctuary and to construct an educational building and fellowship hall upon the Property ("the Fellowship Hall Project"). The Fellowship Hall Project was and is intended, inter alia, to improve handicapped accessibility to the Sanctuary through the construction of new ramps and an elevator, to improve the lighting system and to add air conditioning to the Sanctuary and to bring the Sanctuary into compliance with numerous requirements of the State Building Code, including upgraded electrical and plumbing systems.

3.30  The Fellowship Hall Project also calls for the construction of a new educational building and fellowship hall which would require the removal of an existing storage shed upon the Property and the installation of additional sidewalks, landscaping and related improvements upon the Property.

3.31  In furtherance of the Fellowship Hall Project, the Church retained a licensed professional architect to design the two story classroom building, with attached multipurpose room behind, in the traditional 19th Century attached home and barn motif, which is common in the Hamilton Historic District and in other parts of Hamilton.

3.32   The Church plans to use the proposed education building primarily on Sundays, to provide religious education classrooms for grade school children, teenagers, college students and adults.

3.33   The Church plans to use the proposed multipurpose room for social fellowship activities after worship services and for such traditional Congregational activities as church suppers, youth group activities and Congregational meetings. The proposed multipurpose room will be available for various religious uses, including use as a kitchen and dining area for Congregational dinners, as an auditorium for religious assembly and as a gymnasium for youth sports sponsored by the Church.

3.34   The Fellowship Hall Project will also allow the Church to free up space in the Sanctuary, which resulting space will be remodeled and reconfigured in order to provide adequate, safe and functionally updated space for infant and toddler care within the Sanctuary, during worship services and religious education classes.

3.35   On or about March 8, 2002, the Church filed an application with the Historic District Commission, whereby the Church requested the Historic District Commission to issue a Certificate of Appropriateness for the Fellowship Hall Project (hereinafter "the Application"). A set of plans and drawings, containing seventeen (17) sheets, prepared by Thomas Mayo Associates, Architects and Urban Designers, and dated January 4, 2002, explaining the Fellowship Hall Project in greater detail, was attached to the Application. A copy of said Application is attached hereto and incorporated herein by reference as Plaintiff's Exhibit "C".

3.36   The Historic District Commission conducted public hearings on the Application on May 9, 2002, May 30, 2002, June 13, 2002, and July 30, 2002.

3.37 At the public hearing on July 30, 2002, the Historic District Commission voted unanimously to deny the Application.

3.38 On September 3, 2002, the Historic District Commission filed its written decision with the Hamilton Town Clerk's Office denying the Application. A true and accurate copy of said written decision is attached hereto as Plaintiff's Exhibit "D".

3.39 During the course of the public hearings conducted by the Historic District Commission on the Application, the Church and its architect modified their original design plans, reducing both the square footage and the bulk of the newly proposed building, in response to concerns raised by the Historic District Commission about the size and bulk of the proposed structure.

3.40 During the course of such hearings, the Church and its attorney specifically requested that the Historic District Commission suggest revisions to the Church's proposal with respect to the appropriateness of design, arrangement, texture, material and similar features which revisions, if made, would make the Application acceptable to the Historic District Commission. The Historic District Commission failed and refused to recommend any such specific revisions in its written decision denying the Application. The enabling legislation, M.G.L. c. 40C, §10(a), specifically authorizes historic district commissions to make such recommendations in their written decisions, denying such applications.

3.41 The Historic District Commission has never adopted or published written design guidelines or standards applicable to proposed construction activities within the Hamilton Historic District.

3.42   The Historic District Commission's refusal to cite specific alternative, acceptable design recommendations in its decision, denying the Application, in light of the Historic District Commission's failure to publish written design guidelines, under which the Fellowship Hall Project could be more objectively evaluated, was and is arbitrary and capricious and an abuse of discretion.

3.43   The Church has filed an appeal of the Historic District Commission's decision denying the Application with the Massachusetts Superior Court. That appeal is pending.

3.44   By letter dated January 17, 2002, certain individuals opposed to the Fellowship Hall Project made a demand, through their attorney, upon the Building Inspector for the Town of Hamilton, seeking enforcement of what they claimed were they certain conditions attached to the Amended Site Plan Approval Decision issued by the Board of Appeals in 1993 in connection with the 38 space parking lot.

3.45   By letter dated February 26, 2002, Charles Brett, in his capacity as Inspector of Buildings and Zoning Enforcement Officer for the Town of Hamilton, denied the enforcement request based upon his determination that the Church was in substantial compliance with what Mr. Brett determined to be the conditions attached to the Amended Site Plan Approval Decision.

3.46   By letter dated March 21, 2002, the same individuals who made the enforcement request when the Building Inspector, filed an administrative appeal with the Board of Appeals, challenging the Building Inspector's refusal to take enforcement action against the Church.

3.47   The Board of Appeals conducted public hearings on the neighbors' administrative appeal on May 9, 2002, May 21, 2002, May 28, 2002 and June 6, 2002.

3.48   On June 20, 2002, the Board of Appeals issued a written decision on the administrative appeal, unanimously overturning the Hamilton Building Inspector, and ordering the

enforcement of what the Board of Appeals deemed to be certain conditions attached to the Amended Site Plan Approval Decision. A true and accurate copy of the Board's written decision in the matter, dated June 20, 2002, is attached as Plaintiff's Exhibit "E".

3.49    In its June 20, 2002 decision, the Board of Appeals concluded, inter alia, that, in addition to enforcing what are specifically referred to as "Conditions" in the Amended Site Plan Approval Decision, it has the power to enforce what were specifically denominated as "Findings of Fact" in the Amended Site Plan Approval Decision.

3.50    Specifically, the Board of Appeals' decision, inter alia, ordered enforcement of Finding of Fact No. 13 in the Amended Site Plan Approval Decision, which finding merely recited the parking policy which was being enforced at the time of that decision by the Town of Hamilton Police Department with respect to parking by Church attendees upon Bay Road; and Finding of Fact No. 15, which referred to a statement by a Church representative that the security lights for the parking lot would normally be turned off by 10:00 p.m. The practical effect of the enforcement of these terms is, or may be, to prevent the Church's members and attendees from parking along Bay Road, thereby potentially preventing them from attending services due to a lack of available parking; and, on information and belief, render the Church the only religious institution in the Town of Hamilton that is required, by Town of Hamilton authorities, to shut off security lights for on site parking facilities by 10 P.M.

3.51    The Church is not aware of any other circumstance in which the Board of Appeals has ever recharacterized findings of fact, specifically denominated as such in a prior Board of Appeals' decision, as conditions, and then sought to enforce such findings of fact as conditions attached to a prior grant of zoning relief.

3.52   The Board of Appeals' decision to enforce Findings of Fact, specifically denominated as such in the Amended Site Plan Approval Decision, as conditions to the grant of the Amended Site Plan Approval Decision, is erroneous as a matter of law and/or arbitrary and capricious and an abuse of discretion.

3.53   The Church has filed a timely appeal of the Board of Appeals' June 20, 2002 decision, enforcing what the Board of Appeals deemed to be certain conditions attached to the Amended Site Plan Approval Decision, with the Essex County Superior Court for the Commonwealth of Massachusetts and said appeal remains pending.

3.54   The Church believes and therefore avers that the Town of Hamilton and the Board of Appeals take the position that the Fellowship Hall Project is also subject to site plan review under applicable provisions of the Town of Hamilton Zoning By Law and that a building permit may not issue, and that the Fellowship Hall Project may not proceed, without a written decision from the Board of Appeals approving a site plan design for the Fellowship Hall Project.

3.55   The Fellowship Hall Project meets or exceeds all of the dimensional requirements of the Town of Hamilton Zoning By Law including, without limitation, the lot area and lot coverage requirements.

3.56   The Church believes and therefore avers that pursuant to the so-called Dover Amendment, as set forth in M.G.L., c. 40A, §3, and interpretive case law thereunder, the Fellowship Hall Project is not subject to site plan review by the Board of Appeals.

3.57   The decisions of the Town of Hamilton, the Historic District Commission and the Board of Appeals have resulted in a lack of adequate space and facilities thereby imposing a substantial burden on the Church in the furtherance of its religious mission.

3.58   The actions of the Town of Hamilton, the Historic District Commission and the Board of Appeals in subjecting, and in attempting to subject, the Church to such arbitrary and capricious review procedures, in withholding approvals for the Fellowship Hall Project, and in erroneously and/or illegally interpreting and/or enforcing the 1993 Certificate of Appropriateness and the Amended Site Plan Approval Decision, impose a substantial burden on the Church in the furtherance of its religious mission.

3.59   In addition, the permitting and regulatory processes with which the Town, the Historic District Commission and the Board of Appeals have forced the Church to comply, and with which they continue to force the Church to comply, have cost the Church substantial sums of money, including, without limitation, legal, engineering and architectural fees and related costs, all of which sums could have been better directed towards the furtherance of the Church's religious ministries.

3.60   Defendants, and each of them, acted under color of state law in reaching and enforcing the decisions cited herein.

## CAUSES OF ACTION

### FIRST CLAIM
RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT
42 U.S.C. § 2000CC *ET SEQ.*

4.1   The Church repeats and re-alleges Paragraphs 1.1-3.60 and incorporates said Paragraphs herein by reference.

4.2   Defendants maintain a system of land use regulations under which they make, or have in place formal or informal procedures or practices that permit them to make individualized assessments of the proposed uses for property within the Town of Hamilton.

4.3     Defendants' acts of withholding approval for the Fellowship Hall Project under color of state law, and of attempting to enforce certain "Findings of Fact" as conditions attached to the Amended Site Plan Approval Decision, violate the Church's rights under 42 U.S.C. § 2000cc(a)(1), because said acts impose a substantial burden on the ability of the Church's members to freely exercise their religious beliefs and practices and because said acts are not the least restrictive means available to Defendants of furthering any compelling governmental interest.

4.4     Defendants' actions as described hereinabove constitute a continuing and ongoing violation of federal law that has denied and will perpetually deny the Church the right to use and expand its facilities for the purpose of religious worship.

4.5     Defendants' actions as described hereinabove violate the Church's rights under 42 U.S.C. § 2000cc(b)(3)(B) because they constitute the implementation of land use regulations in a manner that unreasonably limits religious uses and religious structures within the Town of Hamilton.

4.6     As a direct and proximate result of the actions of Defendants, the Church has been caused to incur attorney fees in an amount which continues to accrue.

## SECOND CLAIM
### FREE EXERCISE CLAUSE
### UNITED STATES CONST. AMEND. I

5.1     The Church repeats and re-alleges Paragraphs 1.1-4.6 and incorporates said Paragraphs herein by reference.

5.2     Defendants have in place procedures and/or practices by which they make individualized assessments of the proposed uses of land, but have denied the Application and thus refused to accommodate the Church's religious beliefs.

5.3    Defendants' decisions with respect to the Application and the interpretation and enforcement of the Amended Site Plan Approval Decision, which were made under color of state law and pursuant to an established policy and/or custom, impose a substantial burden on the sincerely held religious beliefs of the Church's membership and those in regular attendance that is not justified by any compelling governmental interest. Therefore, Defendants' decisions violate the rights of the Church's members and attendees to freely exercise their religion, which rights are guaranteed by the First Amendment to the United States Constitution.

5.4    As a direct and proximate result of the actions of the Defendants, the Church has been caused to incur attorney fees in an amount which continues to accrue.

THIRD CLAIM
EQUAL PROTECTION CLAUSE
UNITED STATES CONST. AMEND. XIV

6.1    The Church incorporates by reference Paragraphs 1.1-5.4, as though fully set forth herein.

6.2    Because Defendants' actions, which were taken under color of state law and pursuant to an established policy and/or custom, were arbitrary, capricious, discriminatory, and unreasonable, and/or because they were motivated by an unlawful animus against the Church or the members of the Church, Defendants' actions violate the Church's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

6.3    Because Defendants' actions, which were taken under color of state law and pursuant to an established policy and/or custom, discriminated against the Church and its members based on their religious beliefs and/or practices, Defendants' actions violated the Church's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

6.4     Because Defendants' decisions to deny the Application and to enforce certain "Findings of Fact" as conditions to the Site Plan Approval Decision were made under color of state law and pursuant to an established policy and/or custom, and were made arbitrarily, without consideration of and in disregard of the facts or circumstances of the case, Defendants' actions violated the Church's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

6.5     As a direct and proximate result of the actions of Defendants, the Church has been caused to incur attorney fees in an amount which continues to accrue.

FOURTH CLAIM
DEMAND FOR DECLARATORY RELIEF
DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

7.1     The Church repeats and re-alleges Paragraphs 1.1-6.5 and incorporates said Paragraphs herein by reference.

7.2     An actual and justifiable controversy has arisen and now exists between the Church and Defendants over Defendants' acts of withholding approval for the Fellowship Hall Project and Defendants' imposition of certain "Findings of Fact" set forth in the Amended Site Plan Approval Decision.

7.3     The Church desires a judicial determination of the rights, duties and obligations of the parties with respect to the legality and/or constitutionality of Defendants' actions as described herein.

7.4     A judicial declaration is necessary and appropriate at this time in order that the Church, its membership and those in regular attendance may ascertain their rights, duties and

obligations with respect to the continued use and enjoyment of the property, including the Fellowship Hall Project, as proposed.

7.5   If relief is not granted, the Church, its membership and those in regular attendance will be irreparably injured in that they will be deprived of constitutional rights, including the right to freely exercise their religious beliefs.

7.6   The Church has no adequate remedy at law to prevent or redress this irreparable injury.

WHEREFORE, the Church respectfully requests that this Honorable Court order the following relief:

A.   That the Court declare that Defendants' actions in withholding approval for the Fellowship Hall Project violates the Church's rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq*; the Church's right of free exercise of religion guaranteed by the First Amendment to the United States Constitution; and the Church's right to equal protection under the law, which is guaranteed by the Fourteenth Amendment to the United States Constitution;

B.   That the Court order the Historic District Commission to immediately issue a Certificate of Appropriateness for the Fellowship Hall Project in light of the mandates of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, and the First and Fourteenth Amendments to the United States Constitution;

C.   That the Court declare that the Board of Appeals' actions in seeking to enforce certain "Findings of Fact," as conditions to the Amended Site Plan Approval

Decision, as violative of the Church's rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq*; the Church's right of free exercise of religion guaranteed by the First Amendment to the United States Constitution; and the Church's right to equal protection under the law, which is guaranteed by the Fourteenth Amendment to the United States Constitution;

D.  That Defendants be ordered to pay costs and reasonable attorney fees expended by the Church herein pursuant to 42 U.S.C. § 1988; and

E.  That this Honorable Court order such other and further relief as the Court may deem just, proper and necessary under the circumstances.

## Jury Demand

The Plaintiff, First Congregational Church, demands its right to trial by jury on all issues so triable.

Respectfully submitted this 26th day of November, 2003.

FIRST CONGREGATIONAL CHURCH OF HAMILTON, PLAINTIFF

BY ITS ATTORNEYS:

_____
Kevin M. Dalton
GLOVSKY & GLOVSKY
PARTICIPATING ATTORNEY FOR THE
  RUTHERFORD INSTITUTE
8 Washington Street
Beverly, MA  01915
(978) 922-5000